**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOYCE I. ROBERTSON,<br><br>    Plaintiff,<br><br>  v.<br><br>TOM VILSACK, *et al.*,<br><br>    Defendants. | Case No. 15 C 587<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joyce Robertson ("Robertson") sued Defendants, U.S. Secretary of Agriculture Tom Vilsack and the United States (collectively, "the Government"), for violations of the Age Discrimination in Employment Act and the Rehabilitation Act. After several months of discovery, the Government moved for summary judgment [ECF No. 17]. For the reasons stated herein, the Court grants the Motion.

### I. BACKGROUND

Joyce Robertson works as a nutritionist in the U.S. Department of Agriculture (the "USDA"), in the agency's Chicago office. She is 61 years old and was diagnosed with rheumatoid arthritis in 2002. Because of her arthritis, the Government afforded certain accommodations to Robertson, such as permission to work from home for up to four days a week.

Around July of 2013, Robertson applied for an open position in the office as a lead program specialist, a position that would have been a promotion for her. There were 10 total vacancies, and 19 persons interviewed, including Robertson. A group of five supervisors conducted the interviews and made the ultimate hiring decision: Carla McGill ("McGill"), Vista Fletcher ("Fletcher"), Jacqueline Pipitone ("Pipitone"), Sandra MacMartin, and Susan Holzer.

The supervisors created a list of 12 questions to ask each applicant in order to gauge the applicants' skills relevant to the duties of the position. They rated each applicant on a scale of 1 to 10 based on the answers to these questions. Robertson contends that the panel met and deliberated the applicants' responses before assigning them final scores. Eventually the supervisors ranked every applicant's answer to each question, tabulated the cumulative scores, and ranked all the applicants. The supervisors chose the top 10 highest-ranking applicants for the vacant positions. Robertson did not make the cut; she ranked at 17.

Robertson asserts that her low rank was due to discrimination based on her age and disability (arthritis). She relies on only a few pieces of evidence to support that theory, including several biased statements made by her direct supervisor, McGill. McGill uniformly denies making any of these statements, and since these facts are in dispute, the Court accepts Robertson's account as

true at this stage. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

First, sometime in 2010, McGill denied Robertson's request for leadership training, saying that the required travel would affect Robertson's health and that mostly younger people would be attending. (Robertson Dep. at 31:9 – 32:8.) Years later, shortly before the interviews for the new position in August of 2013, McGill allegedly told Robertson, "You couldn't possibly do my job with your disability," adding that Robertson "would be better off where you are and with your disability," and that Robertson should "leave this to the young folks at your given age." (Robertson Dep. at 45:3 – 47:22, 53:18 – 54:4, 57:19 – 58:17, 78:25 – 81:10.) Robertson was the only other person present when McGill made these statements. (Pl. Local Rule 56.1(b)(3) Resp. at 55.)

Next, still in August of 2013, Robertson alleges that she overheard McGill make the following statement to another supervisor, Pipitone: "She's not going to get selected with that disability." (*See,* Robertson Dep. at 35:25 – 36:22, 71:7 – 78:19.) Robertson believes this statement referred to her and her application for lead program specialist. (Pl. Local Rule 56.1(b)(3) Resp. at 67.) Robertson further contends that she heard from a co-worker that McGill had "pre-selected" a few candidates that she knew she wanted to hire, even before the interviews. (Robertson Dep. at 128:13-25.)

Robertson's final piece of evidence is that after the interviews were over, the supervisors met and discussed the applicants and their responses before assigning scores. Due to McGill's alleged bias, Robertson believes the post-interview deliberations amount to circumstantial evidence that the entire process was tainted.

Robertson points to a single source for this evidence: her own deposition. The Court has omitted consideration of a few other, minor "facts" that Robertson includes throughout her briefs, because she cites to her original Complaint, and no other source, to support them. As the Government points out, that practice violates Local Rule 56.1(b)(3) and runs afoul of case law. *Nisenbaum v. Milwaukee County,* 333 F.3d 804, 810 (7th Cir. 2003) ("Allegations in a complaint are not evidence."). As a result, only those few facts the Court outlined above – primarily facts drawn from Robertson's own deposition – support her opposition to summary judgment.

## II. <u>ROBERTSON'S CLAIMS</u>

The Age Discrimination in Employment Act ("ADEA") protects Robertson from unlawful age-related discrimination, *see,* 29 U.S.C. §§ 621, *et seq.*, while the Rehabilitation Act ("RA") protects her from discrimination based on her disability, *see,* 29 U.S.C. §§ 701, *et seq*. For Robertson to survive summary judgment, the evidence, which the Court views in the light most favorable to

her, must be sufficient to convince a jury that the USDA failed to promote her due to her age or disability. *See, Anderson,* 477 U.S. at 248. Further, the evidence must show that, *but for* the improper consideration of her age or disability, Robertson would have received the promotion. *See, Fleishman v. Continental Cas. Co.,* 698 F.3d 598, 604 (7th Cir. 2012).

Courts consider claims brought under the ADEA and the RA using similar legal frameworks. Assuming that Robertson qualifies as protected under both statutes and that she experienced an adverse employment action, the frameworks are identical in all material respects. *See, e.g., Anderson v. Donahoe,* 699 F.3d 989, 994-95 (7th Cir. 2012) (applying the Title VII legal framework to a Rehabilitation Act claim); *Fleishman,* 698 F.3d at 604 (doing the same for an ADEA claim). The Court therefore analyzes Robertson's claims under both statutes together.

Robertson can proceed to prove her claims under two different paths known as "the direct method" and "the indirect method." Robertson argues that she succeeds under both methods of proof. Under the direct method, circumstantial evidence is allowed, but it must point "directly to a discriminatory reason for the employer's action." *Fleishman,* 698 F.3d at 603 (quoting *Davis v. Con-Way Transp. Central Express, Inc.,* 368 F.3d 776, 783 (7th Cir. 2004)). A plaintiff may prove her case through a "convincing mosaic" of circumstantial evidence, but she must also "connect the

circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons." *Id*.

The indirect method differs primarily based on how the burden of persuasion shifts at the summary judgment stage. A plaintiff utilizing the indirect method must make out a *prima facie* case of discrimination; if she does so, the burden then shifts to her employer to present evidence of a legitimate reason for not promoting her. *See, Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 978-79 (7th Cir. 2004). If the employer establishes a legitimate purpose, it is entitled to summary judgment unless the plaintiff can show the employer's stated reason is pre-textual (or put another way, that the purported reason is just a ruse to mask discriminatory intent). *See, id*. at 979. To make out a *prima facie* case under the indirect method, it is sufficient for a plaintiff to show that "at least one similarly situated employee, not in [the] protected class, was treated more favorably." *Id*. (citing *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 885-86 (7th Cir. 2001)).

First, the Court looks at the direct method. Robertson's case is weak, but she did marshal a few pieces of direct evidence of discrimination: McGill's negative comments about her age, her disability, and her inability to perform higher job functions as a result. To reiterate, the Court accepts Robertson's allegations

about these discriminatory statements as true, although they are hotly disputed. If McGill were the sole decision-maker, those statements coupled with the failure to promote Robertson would be enough under the direct method to create a triable issue of fact. Robertson's problem is that a panel of five supervisors, including McGill, made the hiring decisions together.

Each member of the panel gave a score to each applicant, and the top 10 applicants were chosen for promotion based on their cumulative scores. McGill actually scored Robertson more highly than two other supervisors. Had McGill given Robertson the highest score possible – 120 (10 points for each of the 12 interview questions) – Robertson would have attained a cumulative score of 386. A 386 still would have put Robertson well below the top 10 applicants' scores (the 10th place applicant scored a total of 484 points). For clarity, the Court copies the scoring chart below, showing the scores of the top 10 applicants plus Robertson. Its accuracy is not in dispute, though obviously Robertson claims the results are biased:

**Scores by Supervisor**

| Employees | MacMartin | Holzer | Pipitone | Fletcher | McGill | Total | Rank |
|---|---|---|---|---|---|---|---|
| Employee 1 | 103 | 105 | 99 | 104 | 110 | 521 | 1 |
| Employee 2 | 96 | 102 | 104 | 101 | 106 | 509 | 2 |
| Employee 3 | 101 | 96 | 113 | 94 | 101 | 505 | 3 |
| Employee 4 | 103 | 98 | 101 | 99 | 100 | 501 | 4 |
| Employee 5 | 90 | 92 | 112 | 97 | 108 | 499 | 5 |
| Employee 6 | 97 | 91 | 113 | 95 | 98 | 494 | 6 |
| Employee 7 | 90 | 99 | 106 | 101 | 97 | 493 | 7 |
| Employee 8 | 98 | 95 | 106 | 93 | 100 | 492 | 8 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Employee 9 | 90 | 101 | 97 | 102 | 99 | 489 | 9 |
| Employee 10 | 90 | 91 | 112 | 92 | 99 | 484 | 10 |
| Robertson | 66 | 69 | 57 | 74 | 68 | 334 | 17 |

(Def. Rule 56.1 Statement of Facts at 30.)

So McGill's score, on its own, did not cause Robertson to lose out on a promotion. Robertson needs some evidence that the other supervisors were biased against her based on her age or disability. She has not offered any, despite ample opportunity to root out any incriminating information through discovery. For example, Robertson obtained the extensive handwritten notes that the supervisors took during interviews, but she cannot point to any suggestion of discrimination in them. She says that supervisor Fletcher frequently socialized with McGill, but that's not evidence that Fletcher shared McGill's feelings about Robertson. Robertson also makes much of the fact that the supervisors deliberated before scoring the candidates. That is not surprising, and there is no evidence in the notes or elsewhere to suggest that McGill pressed a biased case against Robertson during these deliberations. Robertson insists otherwise, but her conclusory allegations and purely conjectural statements do not meet Rule 56's requirement that admissible evidence be based on an affiant's personal knowledge. *See, Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999) (citing *Box v. A&P Tea Co.,* 772 F.2d 1372, 1378 (7th Cir. 1985)).

Robertson's claims similarly fail under the indirect method of proof. Here, the Government concedes that she can make out a *prima facie* case by showing others similarly situated in her department were promoted ahead of her. The burden shifts to the Government to show a legitimate reason, which they have done, through the testimony of the supervisors and copious interview notes. The evidence reveals, generally, that the supervisors thought Robertson was less qualified without any reference to her age or disability. For example, McGill ranked Robertson lower than similarly situated applicants because she "could not articulate what she had done to build relationships" and "did not articulate good examples of things she had actually done" in response to questions. (Pl. Local Rule 56.1(b)(3) Resp. at 34.) Fletcher also compared Robertson negatively to her peers because she answered questions with vague generalities. (Pl. Local Rule 56.1(b)(3) Resp. at 35-38.)

Robertson disputes Fletcher's characterizations of her interview, but she does not actually call into question Fletcher's sincerity. She merely disagrees with Fletcher's interpretation of her answers and performance. That's not proof of pretext. It is not enough for Robertson to disagree with the opinions of the supervisors about her job performance; she must point to some evidence suggesting that their stated reason for failing to promote her was a lie. *See, Jordan v. Summers,* 205 F.3d 337, 343

(7th Cir. 2000) (discussing the requirements to prove pretext). Because she has failed to do so, she cannot prove indirectly her ADEA and RA claims.

Before closing, the Court pauses to emphasize the importance of causation in this case. After the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), it is not enough for Robertson to show that discriminatory intent was a motivating factor in the failure to promote her. She must offer evidence from which a jury reasonably could conclude that discrimination was the but-for cause. *See, Gross,* 557 U.S. at 177-180. This is true under both the direct and indirect methods, regardless of burden-shifting. *See, Fleishman,* 698 F.3d at 604. The fact that McGill was not necessary to the decision not to promote Robertson, coupled with Robertson's failure to obtain any evidence that the other supervisors were motivated by prejudice, defeats her claims.

### III. CONCLUSION

For the reasons stated herein, the Government's Motion for Summary Judgment [ECF No. 17] is granted. The case is dismissed.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 6/23/2016